## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DETROIT INTERNATIONAL BRIDGE COMPANY, <br>       a Michigan corporation <br>       12225 Stephens Road <br>       Warren, MI 48089, <br><br>                              Plaintiff, <br>        -vs.- <br><br> U.S. DEPARTMENT OF STATE <br>       2201 C Street NW <br>       Washington, DC 20520, <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY <br>       245 Murray Lane SW <br>       Washington, DC 20528, <br><br> U.S. COAST GUARD <br>       2100 2nd Street SW <br>       Washington, DC 20593, <br><br>                              Defendants. | Docket No. |

## COMPLAINT

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate processing and release of non-exempt agency records responsive to 14 FOIA requests previously submitted by plaintiff Detroit International Bridge Company ("DIBC" or "Plaintiff") to defendants the Department of State, the Department of Homeland Security, and the U.S. Coast Guard ("Defendants").

2.      The information sought by Defendants is relevant to their claims in *Detroit Int'l Bridge Co. and Canadian Transit Company v. U.S. Dep't of State, et al.*, Case No. 10-476, which is currently pending in this Court.  In that litigation, Plaintiff challenges various unlawful actions

taken by Defendants, other U.S. government agencies and officers, the Government of Canada, the Windsor-Detroit Bridge Authority, and the Canada-United States-Ontario-Michigan Border Transportation Partnership to prevent Plaintiff from exercising its franchise right to enlarge and maintain the Ambassador Bridge between Detroit, Michigan and Windsor, Canada by building a "twin span" (the "Twin Span") that will connect to the bridge's existing approaches and roads. Defendants' illegal efforts to thwart Plaintiff's exercise of its franchise rights include (i) the Coast Guard's denial of a navigational permit for the Twin Span, and (ii) unlawfully approving and facilitating the construction of a new government-owned bridge (the "NITC/DRIC") that would occupy virtually the same location as Plaintiff's Twin Span and make it functionally and economically impossible for Plaintiff ever to build the Twin Span.

3.      Even though there is no doubt that Defendants have documents responsive to Plaintiff's requests, Defendants have failed to produce any such documents, other than two documents each containing a single sentence referencing the NITC/DRIC. (The State Department has also produced a small number of documents that it claims are responsive to the 2011 request, but that demonstrably are not.)  Further, Defendants have failed even to make the determination required by 5 U.S.C. § 552(a)(6)(A)(i) as to whether to grant or deny Plaintiff's requests, despite the fact that a majority of the requests were submitted well over a year ago. This includes a request from more than a year ago for the comment responses sent to the State Department related to the NITC/DRIC permit application.  For these documents, no search was even required.  Plaintiff identified for the State Department the specific file and individual responsible for maintaining the file, yet the State Department has failed to produce the documents or even make a determination as to whether it will produce them.

4.      By failing to respond substantively to Plaintiff's FOIA requests, and by opposing the production of the administrative record of the State Department decisions challenged in the parallel litigation, Defendants have denied Plaintiff information necessary to litigate its claims. In what the State Department has described as a "race" between Plaintiff and the proponents of the NITC/DRIC, Defendants' actions have advanced the NITC/DRIC while slowing the progress of the Twin Span.

5.      Plaintiff therefore requests that this Court require Defendants to comply with their legal obligations under FOIA by conducting complete searches of their files, making the required determination, and immediately producing all responsive, non-exempt documents.

## PARTIES

6.      Plaintiff Detroit International Bridge Company ("DIBC") is a corporation incorporated under the laws of the State of Michigan, having its principal place of business at 12225 Stephens Road, Warren, Michigan 48089.

7.      Defendant U.S. Department of State ("State Department") is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

8.      Defendant U.S. Department of Homeland Security ("DHS") is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

9.      Defendant U.S. Coast Guard ("Coast Guard") is an agency of the Department of Homeland Security and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

10.     This Court has both subject-matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.  Venue lies in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

**A.      Requests to the U.S. State Department**

   **(1)      *November 9, 2011 Request (Rights of DIBC) (F2011-26033)***

11.     On November 9, 2011, counsel for DIBC Patrick A. Moran submitted a FOIA request to the Office of Information Programs and Services for the Department of State requesting:

> (1) All documents relating to the consideration or preparation of and draft and final copies of a legal opinion or opinions, any comments, memoranda, reviews or other written materials concerning whether the Detroit International Bridge Company and/or its predecessor American Transit Company and/or the Ambassador Bridge have or had claims to the right to facilitate all traffic and/or collect all tolls for travel by bridge across the Detroit River between Detroit, Michigan and Ontario, Canada, including without limitation, the legal opinion referenced in the July 23, 2004 meeting notes of the Governance Meeting concerning a proposed government-owned bridge, a copy of which is attached to this Request; and

> (2) All documents relating to expropriation powers or loss of expropriation powers or lack of expropriation powers of Detroit International Bridge Company and/or its predecessor the American Transit Company and/or the Ambassador Bridge, including without limitation, any documents relating to the expropriation powers referenced in the July 23, 2004 meeting notes of the Governance Meeting, a copy of which is attached to this Request.

12.     The request stated that Mr. Moran was "prepared to pay the cost of copying the materials requested up to $3,000 without further authorization."

13.     On August 9, 2012, counsel for DIBC Heather King wrote to Elizabeth Lee Martinez of the State Department and reminded the State Department of Mr. Moran's November 9, 2011 request, stating that "Our client has still not received any substantive response even though 9 months has passed since the date of that request and Mr. Moran has personally followed up with the Department of State at least twice related to it."

14.     On October 17, 2012, the State Department informed Mr. Moran that it had initiated searches of four Department of State record systems in response to his request:  "the files of the Central Foreign Policy Records, the files of the Bureau of Western Hemisphere Affairs, the files of the Bureau of Economic and Business Affairs, and the files of the Office of the Legal Adviser."  The letter further reported that the search of the first record system had been completed and resulted in the retrieval of 24 documents, 15 of which it released in full and nine of which it released with excisions.  None of these documents, however, was in any way responsive to the request.

15.     On October 31, 2012, the State Department informed counsel for DIBC Heather King that it was still waiting for a response to a search initiated in the files of the Office of the Legal Advisor.  The State Department informed Ms. King that the search in the files of the Bureau of Economic and Business Affairs had produced no documents and the search in the files of the Bureau of Western Hemisphere Affairs had produced one document, which the State Department would provide to Mr. Moran.

16.     On November 1, 2012, the State Department informed Mr. Moran that the closure of its office for two days due to a hurricane had set back the release of the records of the Bureau of Western Hemisphere Affairs related to the FOIA.

17.    On November 2, 2012, the State Department informed Mr. Moran that it had completed its search of the records of the Bureau of Western Hemisphere Affairs and that this search had resulted in the retrieval of one document, which it released in full.  This document was not responsive to the request. On February 13, 2013, counsel for DIBC Heather King again contacted the State Department to remind it of the 2011 FOIA request, noting that 14 months had passed since DIBC submitted the 2011 FOIA and that, since the release of the one document from the Bureau of Western Hemisphere Affairs, "the Department has neither completed the searches promised in response to the 2011 FOIA request nor provided responsive documents."

18.    The State Department has never made a final determination on this request.  It has failed to complete its search of the remaining record systems and thus has failed to inform Mr. Moran whether it would be releasing or withholding documents in the possession, custody, or control of those offices.  It also has failed to produce any documents responsive to the request.

   **(2)    *June 4, 2012 Request (Ambassador Bridge, Gateway Project, and NITC/DRIC) (F2012-29518)***

19.    On June 4, 2012, counsel for DIBC Patrick A. Moran submitted a FOIA request to the Office of Information Programs and Services for the Department of State requesting:

   (1) All documents relating to the **Ambassador Bridge** that spans the Detroit River between Detroit, Michigan and Windsor, Ontario;

   (2) All documents relating to the **Ambassador Bridge Gateway Project** including without limiting the generality of the foregoing documents that concern connecting the Ambassador Bridge to the U.S. highway system and the State of Michigan truckline system and/or accommodating the construction of a twin span to the Ambassador Bridge;

   (3) All documents relating to the **Ambassador Bridge Enhancement Project** including without limiting the generality of the foregoing, documents that concern construction or operation of a twin span to the Ambassador Bridge;

   (4) All documents to, from or about Canada relating to the Ambassador Bridge Gateway Project, or the Ambassador Bridge's Enhancement Project, or the **twin**

**or twinning of the Ambassador Bridge**, or a **Second Span** to the Ambassador Bridge;

(5) All documents relating to the **Detroit River International Crossing** or **DRIC** bridge to span the Detroit River between Detroit, Michigan and Windsor, Ontario, including <u>without limiting the generality of the foregoing</u> all documents to, from or about **Canada** relating to the Detroit River International Crossing or DRIC;

(6) All documents relating to the **New International Trade Crossing** or **NITC** bridge to span the Detroit River between Detroit, Michigan and Windsor, Ontario, including <u>without limiting the generality of the foregoing</u>, all documents to, from or about Canada relating to the New International Trade Crossing or NITC bridge;

(7) <u>Without limiting the generality of the above requests</u>, all documents to or from the Department of Transportation and the **Office of Michigan Governor Snyder** and/or the office of **Michigan Lieutenant Governor Calley** and/or the offices of their respective **Chiefs of Staff** relating to the Ambassador Bridge, or the Ambassador Bridge Gateway Project, or the Ambassador Bridge Enhancement Project; or the twinning of the Ambassador Bridge, or a Second Span to the Ambassador Bridge including meeting documents relating to meetings or discussions by Ambassador Jacobson or his staff and any of the above.

20.     The request stated that Mr. Moran was "prepared to pay the cost of copying the materials requested up to $5,000 without further authorization."

21.     On June 19, 2012, the State Department acknowledged receipt of the request and assigned it case number F2012-29518.

22.     By letter of September 18, 2012, the State Department informed Mr. Moran that the State Department had initiated searches of three Department of State record systems:  the Central Foreign Policy Records, the files of the Bureau of Western Hemisphere Affairs, and the Office of the Legal Adviser.  The letter further reported that the search of the first record system had been completed and resulted in the retrieval of two documents, which the State Department released in part after redacting information that it claimed to be classified.  The letter informed Mr. Moran that he had the right to appeal its determination as to the material withheld from the

two documents.  The letter otherwise committed to keep Mr. Moran informed "as your case progresses."

23.     On October 31, 2012, the State Department informed counsel for DIBC Heather King that it was still waiting for a response to searches initiated in the files of the Bureau of Western Hemisphere Affairs and the Office of the Legal Advisor.

24.     The State Department has failed to make a final determination or provide any additional information related to the request other than the two documents from which it redacted material.   It has failed to produce any documents from the two record systems that it had yet to search as of September 18, 2012, and has failed to identify the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.  It also has never informed Mr. Moran that it completed the search with respect to those two record systems.

    **(3)**    ***June 28, 2012 Request (NITC/DRIC Presidential Permit Application) (F2012-30443)***

25.     On June 28, 2012, counsel for DIBC Heather King submitted a FOIA request to the Office of Information Programs and Services for the Department of State requesting "a copy of the Presidential permit application (the 'Application')" submitted by the Governor of Michigan on or about June 20, 2012.

26.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

27.     On June 29, 2012, the State Department assigned the request case number F2012-30443 and on August 17, 2012, sent a subsequent letter stating that it would "begin processing of

the request" and that it would view the cut-off date for the search as the date the search was initiated.

28.     On October 13, 2012, Ms. King emailed the State Department to inquire about the status of the request.

29.     On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request.  Ms. King confirmed on December 3, 2012, that she agreed to do so.

30.     The State Department has never made any determination concerning this request. It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(4)**     ***July 10, 2012 Request (Communications Concerning the NITC/DRIC) (F2012-31314)***

31.     On July 10, 2012, counsel for DIBC Heather King submitted a FOIA request to the Office of Information Programs and Services for the Department of State requesting:

> 1. All records of intra-agency communications within the Department of State from 2011 or 2012 concerning or related to plans to build a new international bridge crossing between Michigan and Canada in the area of Detroit, Michigan, and Windsor, Canada (the "Bridge").  Such records should include, but not be limited to, communications concerning or related to the application for a Presidential permit submitted by the State of Michigan, the Michigan Department of Transportation, and/or the Michigan Strategic Fund on or about June 20, 2012, including any records regarding any amendment or supplementation of such application after such date (the "Application").  The names that may be used for the Bridge include, but are not limited to, the Detroit River International Crossing (or "DRIC"), the New International Trade Crossing (or "NITC"), and the Detroit River International Border Crossing.

> 2. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of the Interior concerning or related to the Bridge, including, but not limited to,

communications concerning the Application as required by Executive Order 13337.

3. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of Defense concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

4. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of Commerce concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

5. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of Energy concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

6. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of Justice concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

7. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Department of Transportation concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

8. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the U.S. Department of Homeland Security concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

9. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of the Environmental Protection Agency concerning or related to the Bridge, including, but not limited to, communications concerning the Application as required by Executive Order 13337.

10. All records of communications from 2012 between the Department of State and any agent, representative, official or instrumentality of any other U.S. Government agency concerning or related to the Bridge including, but not limited to, communications concerning the Application.

11. All records of communications from 2011 or 2012 between the Department of State and any agent, representative, official or instrumentality of the State of Michigan—including, but not limited to, the Office of the Governor, the Michigan Department of Transportation, or the Michigan Strategic Fund— concerning or related to the Bridge.

12. All records of communications from 2011 or 2012 between the Department of State and any agent, representative, official or instrumentality of the Government of Canada—including, but not limited to, Transport Canada— concerning or related to the Bridge.

32. In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

33. Later that month, the State Department assigned the request case number F2012-31314 and on August 27, 2012 sent a subsequent letter stating that it would "begin processing of the request" and that it would view the cut-off date for the search as the date the search was initiated.

34. On October 13, 2012, Ms. King emailed the State Department to inquire about the status of the request.

35. On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request. Ms. King confirmed on December 3, 2012, that she agreed to do so.

36. The State Department has never made any determination concerning this request or provided any additional information concerning its status. It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii)

identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(5)** ***July 10, 2012 Request (Prior Permit Applications and International Agreements) (F2012-39005)***

37.     On July 10, 2012, counsel for DIBC Heather King submitted a separate FOIA request to the Office of Information Programs and Services for the Department of State requesting:

> 1.  All applications for Presidential permits submitted to the State Department for approval pursuant to Executive Orders 11423, 12847, 13337, and, to the extent applicable, the International Bridge Act (33 U.S.C. §535 *et. seq.*).
>
> 2.  All records of decisions made by the State Department regarding applications for Presidential permits.
>
> 3.  All records of agreements submitted to the State Department for approval pursuant to the International Bridge Act, 33 U.S.C. §535(a) (providing that States may enter into agreements with Canada or Mexico to construct, operate, and maintain international bridges, subject to the approval of the State Department).
>
> 4.  All records of decisions made by the State Department regarding whether or not to approve agreements submitted pursuant to the International Bridge Act.

38.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

39.     Initially, the State Department informed Ms. King that it would consolidate the second July 10 request with the first, but later assigned it a separate case number (F2012-39005) while stating that it would retain its place in the State Department queue.

40.     On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request.  Ms. King confirmed on December 3, 2012, that she agreed to do so.

41.     The State Department has never made any determination concerning this request. It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(6)     *August 2, 2012 Request (Laredo-Mexico Bridge) (F2012-33040)***

42.     On August 2, 2012, DIBC counsel Heather King submitted a FOIA request to the State Department requesting:

> 1. The application for a Presidential Permit submitted to the U.S. Department of State in or about 2003-2004 pursuant to Executive Order 11423 or other authority from the city of Laredo, Texas and from Webb County, Texas in connection with a proposed bridge between Laredo, Texas and Mexico, as such applications may have been amended or supplemented subsequent to such date (the "Applications").  The Applications may refer to this bridge as the Laredo International Bridge 5, Laredo's Fifth Bridge, Fifth International Bridge, Fifth International Non-Commercial Bridge, or some other name.

> 2. Any communications related to the Applications between the U.S. Department of State and the city of Laredo, Texas and between the U.S. Department of State and Webb County, Texas.

43.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

44.     The State Department assigned the request case number F2012-33040 and on August 30, 2012, sent a subsequent letter stating that it would "begin processing of the request" and that it would view the cut-off date for the search as the date the search was initiated.

45.     On October 13, 2012, Ms. King emailed the State Department to inquire about the status of the request.

46.     On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request.  Ms. King confirmed on December 3, 2012, that she agreed to do so.

47.     The State Department has never made any determination concerning this request or provided any additional information concerning its status.  It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(7)**     ***August 2, 2012 Request (Calais, Maine-St. Stephen, New Brunswick, Canada Bridge) (F2012-33041)***

48.     On August 2, 2012, DIBC counsel Heather King submitted a FOIA request to the State Department requesting:

> 1. The application for a Presidential Permit submitted to the U.S. Department of State in or about 2003 pursuant to Executive Order 11423 or other authority from the Maine Department of Transportation in connection with a proposed bridge between Calais, Maine and St. Stephen, New Brunswick, Canada, as such application may have been amended or supplemented subsequent to such date (the "Application").  The Application may refer to this bridge as the International Avenue Bridge, the Calais-St. Stephen Bridge, or some other name.

> 2. Any communications related to the Application between the U.S. Department of State and the Maine Department of Transportation.

49.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

14

50.     The State Department assigned the request case number F2012-33041 and on August 30, 2012, sent a subsequent letter stating that it would "begin processing of the request" and that it would view the cut-off date for the search as the date the search was initiated.

51.     On October 13, 2012, Ms. King emailed the State Department to inquire about the status of the request.

52.     On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request.  Ms. King confirmed on December 3, 2012, that she agreed to do so.

53.     The State Department has never made any determination concerning this request or provided any additional information concerning its status.  It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(8)     *September 17, 2012 Request (Responses to NITC/DRIC Application) (F2012-36270)***

54.     On September 17, 2012, DIBC counsel Heather King submitted a FOIA request to the State Department requesting "a copy of all letters, emails, faxes, or other communications or documents submitted in response to the application for a Presidential permit for the New International Trade Crossing, pursuant to Public Notice 7951, published at 77 Fed. Reg. 40,937 on July 11, 2012, and Public Notice 7982, published at 77 Fed. Reg. 49,476 on August 16, 2012."

55.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

56.     The State Department assigned the request case number F2012-36270 and on September 17, 2012, sent a subsequent letter stating that it would "begin processing of the request" and that it would view the cut-off date for the search as the date the search was initiated.

57.     On October 13, 2012, Ms. King emailed the State Department to inquire about the status of the request.

58.     On or about October 31, 2012, Ms. King contacted the State Department FOIA officer responsible for processing the request and identified for her the individual in the State Department's Office of the Legal Adviser who was responsible for assembling the comments on the NITC/DRIC application.  Ms. King also gave the FOIA officer that person's e-mail address and phone number.  Thus, no search was even necessary for these documents.  To respond to the request, the State Department needed only to copy the relevant file and send it to Ms. King.

59.     On November 19, 2012, a State Department analyst sent an e-mail to Ms. King confirming that she was willing to pay up to $3,000 to process the request.  Ms. King confirmed on December 3, 2012, that she agreed to do so.

60.     Notwithstanding the ease with which the State Department could have complied with this request, it has never made any determination concerning this request or provided any additional information concerning its status.  It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(9)     *March 21, 2013 Request (Boundary Waters Treaty) (F2013-05177)***

61.     On March 21, 2013, DIBC counsel Heather King submitted a FOIA request to the State Department requesting "a copy of all agency records relating to and/or referencing the

Convention Concerning the Boundary Waters Between the United States and Canada, U.S.-U.K., Jan. 11, 1909, 36 Stat. 2448, sometimes referred to as the 'Boundary Waters Treaty' of 1909."

62.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

63.     The State Department assigned the request case number F2013-05179 and on August 30, 2012, sent a subsequent letter stating that it would "begin processing of the request" and that it would view the cut-off date for the search as the date the search was initiated.

64.     The State Department has never made any determination concerning this request or provided any additional information concerning its status.  It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(10)    *March 21, 2013 Request (Interagency Streamlining Agreement) (F2013-05178, F2013-09493)***

65.     On March 21, 2013, DIBC counsel Heather King submitted a FOIA request to the State Department requesting "a copy of all agency records relating to and/or referencing the Interagency Streamlining Agreement for Preparation of the Detroit River International Crossing Environmental Impact Statement, which the U.S. Department of State (represented by Assistant Secretary of State Roger F. Noriega) entered into with the Federal Highway Administration, the U.S. Environmental Protection Agency, the U.S. Army Corps of Engineers, the U.S. Fish and Wildlife Service, the U.S. General Services Administration, the U.S. Coast Guard, and the U.S. Department of Homeland Security."

66.     In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

67.     On April 12, 2013, the State Department sent Ms. King a letter stating, "You have not reasonably described the records you seek in a way that someone familiar with Department records and programs could locate them."  The letter further stated that the State Department had closed the request while requesting that Ms. King "specify or narrow the time frame of your request."

68.     In response, on May 30, 2013, Ms. King sent a letter specifying the date range for the request as "2000 – Present."  Ms. King further stated that she did not desire to narrow the request further but again made clear that she agreed to "pay any reasonably necessary fees related to this request."

69.     By letter of June 21, 2013, the State Department assigned the request a new case number (F2013-09493).  The letter further stated that the State Department would "begin the processing" of the request and that it would view the cut-off date for the search as the date the search was initiated.

70.     The State Department has never made any determination concerning this request or provided any additional information concerning its status.  It has never (i) informed Ms. King that the search was completed or provided any information concerning the progress of the search, if any; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents that it plans to withhold under any FOIA exemptions.

**(11)** ***March 21, 2013 Request (Ambassador Bridge, Peace Bridge, and Blue Water Bridge) (F2013-05179, F2013-09494)***

71.    On March 21, 2013, DIBC counsel Heather King submitted a FOIA request to the State Department requesting "a copy of all agency records relating to and/or referencing the following three international bridges: the Ambassador Bridge, between Detroit, Michigan and Windsor, Ontario, Canada; the Peace Bridge, between Buffalo, New York and Fort Erie, Ontario, Canada; and the Blue Water Bridge, between Port Huron, Michigan and Sarnia, Ontario, Canada."

72.    In the letter, Ms. King stated that the request should be considered a "commercial use request" as defined in 22 C.F.R. § 171.11(l) and agreed "to pay any fees reasonably incurred as a result of this request."

73.    On April 12, 2013, the State Department sent Ms. King a letter stating, "You have not reasonably described the records you seek in a way that someone familiar with Department records and programs could locate them." The letter further stated that the State Department had closed the request while requesting that Ms. King "specify or narrow the time frame of your request" and "narrow the scope of your request."

74.    In response, on May 30, 2013, Ms. King sent a letter specifying the date range for the request as "1977 – Present." Ms. King further stated that she did not desire to narrow the request further but again made clear that she agreed to "pay any reasonably necessary fees related to this request."

75.    By letter of June 21, 2013, the State Department assigned the request a new case number (F2013-09494). The letter further stated that the State Department would "begin the processing" of the request and that it would view the cut-off date for the search as the date the search was initiated.

76.     The State Department has never made any determination concerning this request. It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents it plans to withhold under any FOIA exemptions.

**B.     Request to Department of Homeland Security**

77.     On August 2, 2012, counsel for DIBC Heather King submitted a FOIA request to the Director, Disclosure & FOIA Operations of the U.S. Department of Homeland Security, requesting:

> 1. All records of Department of Homeland Security intra-agency communications concerning or related to plans to build a new international bridge crossing between Michigan and Canada in the area of Detroit, Michigan, and Windsor, Ontario (the "Bridge"). Such records should include, but not be limited to, communications concerning or related to the application for a Presidential Permit submitted by the State of Michigan, the Michigan Department of Transportation, and/or the Michigan Strategic Fund (the "Application") on or about June 20, 2012.  The names that may be used for the Bridge include, but are not limited to, the Detroit River International Crossing (or "DRIC"), the New International Trade Crossing (or "NITC"), and the Detroit River International Border Crossing.
>
> 2. All records of communications between the Department of Homeland Security and any employee, agent, representative, official, or instrumentality of the U.S. State Department concerning or related to the Bridge, including, but not limited to communications concerning the Application. (Pursuant to Executive Order 13337, the State Department is required to consult with the Department of Homeland Security regarding the Application.)
>
> 3. All records of communications between the Department of Homeland Security and any employee, agent, representative, official, or instrumentality of any other U.S. Government agency or department concerning or related to the Bridge, including, but not limited to, communications concerning the Application.
>
> 4. All records of communications between the Department of Homeland Security and any employee, agent, representative, official, or instrumentality of the State of Michigan—including, but not limited to, the Office of the Governor, the Michigan Department of Transportation, or the Michigan Strategic Fund— concerning or related to the Bridge.

5. All records of communications between the Department of Homeland Security and any employee, agent, representative, official, or instrumentality of the Government of Canada—including, but not limited to, Transport Canada—concerning or related to the Bridge.

78.   In the request, Ms. King agreed to pay "any fees reasonably incurred as a result of this request."

79.   DHS subsequently referred the request to U.S. Customs and Border Protection ("UCBP") and the Coast Guard.

80.   On August 17, 2012, the FOIA Division of UCBP informed Ms. King that it had "queried the responsive offices for responsive records" and that one of the processors in the office would respond to the request "as expeditiously as possible."

81.   On August 30, 2012, UCBP informed Ms. King that it had searched its files and found no responsive documents.

82.   On September 13, 2012, Shelly H. Sugarman, the Chief, Permits Division, of the Coast Guard, informed Ms. King that her office had "queried the appropriate component of the Coast Guard for responsive records" and that her office would respond to the request "as expeditiously as possible."

83.   On October 24, 2012, the Coast Guard left a voice-message for Ms. King stating it expected to have the responsive documents ready within a month.

84.   On June 3, 2013, counsel for DIBC emailed the Coast Guard to check on the status of the request.

85.   The Coast Guard has subsequently failed to provide any substantive response to this request.  It has never (i) informed Ms. King that the search was completed; (ii) produced any documents in response to the request; or (iii) identified the scope of the documents that it will produce or the scope of the documents it plans to withhold under any FOIA exemptions.

**C.**     **Requests to U.S. Coast Guard**

**(1)**     *August 5, 2013 Request*

86.     On August 5, 2013, counsel for DIBC Hamish Hume sent a FOIA request to the

designated FOIA officer for the Coast Guard, requesting:

> a copy of all agency records relating to any instance in which the U.S. Coast
> Guard has invoked, relied on, and/or based an agency decision in whole or in part
> on U.S. Coast Guard regulation 33 C.F.R. 115.05 ('Necessary primary authority')
> or a similarly-worded regulation, in response to any: (1) Application for a
> navigational permit for the construction of, addition to, or any other construction
> relating to an international bridge authorized by a Congressional statute; (2)
> Application for the construction of, addition to, or any other construction relating
> to any other international bridge; and (3) Application for a navigational permit for
> the construction of, addition to, or any other construction relating to a domestic
> bridge.

87.     In the request, Mr. Hume agreed to pay "any fees reasonably incurred as a result

of this request."

88.     The Coast Guard has failed to provide any response to this request.

**(2)**     *September 17, 2013 Request*

89.     On September 17, 2013, counsel for DIBC Hamish Hume sent a FOIA request to

the designated FOIA officer for the Coast Guard, requesting:

> a copy of all documents of any kind relating to the change to U.S. Coast Guard
> regulation 33 C.F.R. 115.05 ('Necessary primary authority'), as published in the
> Federal Register on June 2, 2011 (76 Fed. Reg. 31,836), in which the word
> "builder" was changed to the word "applicant," so that the sentence (1) "Special
> care will be taken that Federal approval is not granted when there is doubt of the
> right of the builder to construct and utilize the bridge," became (2) "Special care
> will be taken that Federal approval is not granted when there is doubt of the right
> of the applicant to construct and utilize the bridge."

90.     In the request, Mr. Hume agreed to pay "any fees reasonably incurred as a result

of this request."

91.     On November 14, 2013, Duane Boniface of the Coast Guard sent an e-mail to Mr. Hume stating that the Coast Guard had no information concerning the change in its regulations "other than what was published in the Federal Register at that time."

92.     This response could not have been accurate.  It is inconceivable that the Coast Guard possesses no documents that relate to a change in the Coast Guard regulations.

93.     Mr. Hume responded on November 18, 2013, with an e-mail that requested that the Coast Guard detail its search in response to the request and that the Coast Guard search the files of individuals who were involved in the decision to change the Coast Guard's regulations.

### COUNT ONE

94.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

95.     Defendants have violated FOIA by failing to make promptly available the records sought by the foregoing requests as required by 5 U.S.C. § 552(a)(3)(A) and Defendants' corresponding regulations.

96.     Defendants have violated FOIA by failing to make a determination as to the foregoing requests within the time limits prescribed by 5 U.S.C. § 552(a)(6)(A) and Defendants' corresponding regulations.

97.     Because Defendants failed to comply with the time-limit provisions of 5 U.S.C. § 552(a)(6)(A), Plaintiff has constructively exhausted its administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Order Defendants to complete the processing of Plaintiff's requests and promptly produce all responsive, non-exempt documents immediately to Plaintiff;

(b) Issue a declaration that Plaintiff is entitled to disclosure of the requested records;

(c) Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

(d) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(e) Grant such other relief as the Court may deem just and proper.

<div style="margin-left:40%">

Respectfully submitted,

  /s/ Hamish P.M. Hume
Hamish P.M. Hume
Samuel C. Kaplan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave NW
Washington, DC 20015
(202) 237-2727 (Telephone)
(202) 237-6131 (Fax)

*Counsel for Plaintiff Detroit International Bridge Company*

</div>

Dated: November 26, 2013